UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 13-20966-CIV-O'SULLIVAN

[CONSENT]

REGIONS BANK,

      Plaintiff,

v.

The 62' OCEAN SPORT FISH, Hull I.D.
No. XY0011462J203, its engines, tackle,
rigging, apparel and appurtenances, etc.,
in rem, and CLASS ACTION OF SOUTH
FLORIDA and JOHN H. RUIZ, in personam,

      Defendants.

_____/

## ORDER

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment (DE# 78, 5/5/14) and the Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (DE# 84, 6/2/14). On December 20, 2013, parties filed their Joint Consent to Jurisdiction by a United States Magistrate Judge (DE# 47, 12/20/13) and this matter was referred to the undersigned by the Honorable Joan A. Lenard, United States District Judge for the Southern District of Florida, pursuant to 28 U.S.C. § 636(b), for the final disposition of the case. See Order Referring Case (DE# 48, 12/20/13).

## BACKGROUND

On March 18, 2013, Regions Bank ("plaintiff") filed a one-count verified complaint to foreclose on a first preferred ship mortgage pursuant to 46, United States Code, Section 31301, et seq. See Verified Complaint (DE# 1, 3/18/13).

On May 5, 2014, the defendants filed their motion for summary judgment. See Defendants' Motion for Summary Judgment (DE# 78, 5/5/14). The plaintiff filed its response on May 19, 2014. See Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (DE# 83, 5/19/14). No reply was filed.

The plaintiff filed its motion for summary judgment on June 2, 2014. See Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (DE# 84, 6/2/14). The defendants filed their response on July 1, 2014. See Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (DE# 88, 7/1/14). The plaintiff filed its reply on July 8, 2014. See Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (DE# 89, 7/8/14). This matter is ripe for consideration.

## THE PARTIES' STATEMENTS OF FACT

Local Rule 56.1(b) states as follows:

**(a) Statement of Material Facts.** A motion for summary judgment and the opposition thereto shall be accompanied by a statement of material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively. The statement shall:

(1) Not exceed ten (10) pages in length;

(2) Be supported by specific references to pleadings, depositions, answers to interrogatories, admissions, and affidavits on file with the Court; and

(3) Consist of separately numbered paragraphs.

**Statements of material facts submitted in opposition to a motion for summary judgment shall correspond with the order and with the paragraph numbering scheme used by the movant**, but need not

2

repeat the text of the movant's paragraphs. Additional facts which the party opposing summary judgment contends are material shall be numbered and placed at the end of the opposing party's statement of material facts; the movant shall use that numbering scheme if those additional facts are addressed in the reply.

**(b) Effect of Failure to Controvert Statement of Undisputed Facts. All material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement**, provided that the Court finds that the movant's statement is supported by evidence in the record.

S.D. Fla. L.R. 56.1(b) (emphasis added).

In the instant case, both parties moved for summary judgment. The defendants did not comply with the requirements of Local Rule 56.1. While the defendants filed their own statement of disputed facts (see Defendants' Statement of Disputed Facts (DE# 88-1, 7/1/14)) and the Defendant's Statement of Undisputed Facts (DE# 78-2, 5/5/14) in support of their summary judgment motion, the defendants did not file a statement of material facts in opposition to the plaintiff's summary judgment motion which corresponded with the paragraph numbering scheme used by the plaintiff as required by S.D. Fla. L.R. 56.1(a). Therefore, the undersigned will deem admitted those facts in the plaintiff's Statement of Material Facts (DE# 84, 6/2/14) which are supported by the record. S.D. Fla. L.R. 56.1(b). "[E]ven where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that the evidence on the record supports the uncontroverted material facts that the movant has proposed." Hoff v. Steiner Transocean, Ltd., No. 12-22329-CIV,  2014 WL 273075, at *5 (S.D. Fla. Jan. 24, 2014) (citing Reese v. Herbert, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1103 n. 6 (11th Cir. 2004)).

3

Moreover, in issuing this Order on the parties' cross-motions for summary judgment, the undersigned will consider those facts contained in the Defendants' Statement of Disputed Facts (DE# 88-1, 7/1/14) and the Defendant's Statement of Undisputed Facts (DE# 78-2, 5/5/14), which are not disputed by the plaintiff and are otherwise supported by the record, and any additional undisputed facts in the record which were omitted from the parties' statements of undisputed facts, but are nonetheless material to a ruling on the cross-motions for summary judgment.

## FACTS

On May 17, 2006, defendant John H. Ruiz executed a promissory note with the plaintiff in the principle amount of $1,114,231.00 (hereinafter "Promissory Note"). Mr. Ruiz is the borrower on the Promissory Note and personally liable for all amounts secured by that instrument.

On the same day, defendant Class Action of South Florida ("Class Action") executed a Commercial Security Agreement ("Security Agreement") with the plaintiff in the principle amount of $1,114,231.00. See Exhibit A to Verified Complaint (DE# 1-2, 3/18/13). The Security Agreement contained the following relevant provisions:

> **BORROWER'S WAIVERS AND RESPONSIBILITIES:** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.
>
> ***

4

**GRANTOR'S WAIVERS:** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Borrower or Grantor, or any other party to the indebtedness or the Collateral. . . . No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

***

**DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default**. Borrower fails to make any payment when due under the indebtedness.

***

**Cure Provisions.**  If any default, other than a default in payment is curable and if Grantor has not been given a notice of breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default; (1) cures the default within fifteen (15) days; or (2) if the cure requires more than (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT**. If an Event of Default occurs under this Agreement, at any time thereoafter, Lender shall have all rights of a secured party under the Florida Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies.

**Accelerate Indebtedness**. Lender may declare the entire indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

***

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provision are a part of this Agreement:

***

5

**Governing Law.** This agreement will be governed by the federal law applicable to lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. The agreement has been accepted by Lender in the State of Florida.

\*\*\*

**No Waiver by Lender**: Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

\*\*\*

**DEFINITIONS.** The following capitalized words and terms shall have the following meaning when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

\*\*\*

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

\*\*\*

**Event of Default.** The words "Event of Default" mean any of

6

the events of defaults set forth in this Agreement in the
default section of this Agreement.

Security Agreement (DE# 1-2 at 1-5, 3/18/13).

Also on May 17, 2006, Mr. Ruiz, individually as guarantor, and Class Action, as

mortgagor, executed a First Preferred Ship's Mortgage ("Mortgage") in the amount of

$1,114,231.00. See Exhibit B to Verified Complaint (DE# 1-3, 3/18/13). The Mortgage

contained the following relevant provisions:

3.      **MULTIPLE MORTGAGORS:** Each person who signs this Mortgage
as Mortgagor will be responsible for the full amount of the Debt and
everything required of Mortgagor, unless specifically stated otherwise
below. You may sue one Mortgagor without joining or notifying and co-
Mortgagor. You do not have to notify one Mortgagor that another has
defaulted under this Mortgage. You may give more Mortgagor extensions
to pay or change or release his responsibility without releasing any co-
Mortgagor or treating a co-Mortgagor in the same way. Each person who
signs this Mortgage as an Other Owner makes all of the title warranties
but none of the other promises.

***

7.      **GOVERNING LAW:** The parties have chosen federal law, including
but not limited to 46 U.S.C., Section 30101, 31301, and the sections
following in 46 U.S.C., Section 31301 as amended to cover all of the
provisions of this Mortgage. In particular, 46 U.S.C. 31322 (b) covers the
interest provisions of the Note and this Mortgage. If there are gaps in
federal law as to non-interest provisions, and only to such extent, the law
of the State of FLORIDA shall govern this transaction.

***

24.     **DEFAULT, ACCELERATION AND REPOSSESSION:** (A)
DEFAULT: I will be in default if: . . . (b) I do not make any payment when
due . . . (B) ENTIRE BALANCE DUE: (1) Interest Before Judgment.  If I
am in default, you may require that the unpaid balance of the Amount
Financed be paid in full with accrued interest, but no prepayment credit is
required because interest is not computed in advance for the term of the
debt unless the Note provides for such a penalty. (2) Post Judgment
Interest.  In the case of a judgment, interest on the unpaid balance of the
judgment will be payable at the applicable judicial judgment rate, or if

7

permitted by law, at the Loan Rate(s) in effect under the Note from time to time.  (C) REPOSSESSION: You have the right to repossess the Boat without Court Order, if I default, under the note or this Mortgage. Otherwise, you have the right to foreclose in federal court under the maritime laws of the United States. You may demand that I assemble on the boat all equipment covered by the Mortgage.

***

29.  **NO WAIVER OF RIGHTS:** You may delay in enforcing any of your rights without losing any of them.

***

32.  **TIME IS OF THE ESSENCE:** Time is of the essence. This means that all payments which are required must be made on the day due. Except as provided in Section 25 above, there are no grace periods provided in this Mortgage. If I require additional time to make a payment, I understand that I must obtain authorization or approval for making a late payment in writing in advance.

***

35.  **AMENDMENTS:** Any change in the terms of this Mortgage must be made in writing and signed by you, and me, or my attorney-in- [illegible].

First Preferred Ship's Mortgage (DE# 1-3 at 2-3, 3/18/13).

From May 17, 2006 through July 31, 2013, account holder "Class Action c/o John H. Ruiz P.A." was assessed late charges a total of 61 times. On January 17, 2013, the plaintiff sent a letter to defendant John H. Ruiz stating in part:

We have sent you numerous notices regarding past-due payments but our efforts to date have been unsuccessful in bringing your account current. Since we have given you every reasonable opportunity to bring your account current, we regret to notify you that this letter must serve as our final 72-hour demand for voluntary payment.

This deadline will take into account the normal postal delivery time required for us to receive your payment. Please call us right away at the number below to confirm receipt of this letter.

Thank you for your prompt attention to this important matter.

8

January 17, 2013 Letter (DE# 88 at 9, 7/1/14). The letter further indicated that the total

amount due was $14,965.16. Also on January 17, 2013, the plaintiff issued a

"Consumer Loan Notice of Payment Due" indicating that the total amount due by

February 1, 2013 was $22,792.10 and that the "past due amount" was $14,365.16.[1]

      On January 2, 2013,[2] defendant Ruiz issued Check # 1083 in the amount of

$7,826.94 to the plaintiff. See Check # 1083 (DE# 88 at 10, 7/1/14). On January 25,

2013, defendant Ruiz issued Check # 1153 in the amount of $7,826.94 to the plaintiff.

See Check # 1153 (DE# 88 at 12, 7/1/14). The plaintiff accepted both payments and

applied them to the "Class Action c/o John H. Ruiz P.A." account. See Account History

(DE# 84-1 at 10, 6/2/14). The plaintiff did not provide any further notice of default or any

---

    [1] "A district court may consider hearsay in ruling on a summary judgment motion where that statement could be 'reduced to admissible evidence at trial.'" Hetherington v. Wal-Mart, Inc., 511 F. App'x 909, 911 (11th Cir. 2013) (per curiam) (quoting Macuba v. DeBoer, 193 F.3d 1316, 1323 (11th Cir.1999)). "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial." Jones v. UPS Ground Freight, 683 F. 3d 1283, 1294 (11th Cir. 2012) (citation omitted). The undersigned finds that both the account history and the January 17, 2013 letters from the plaintiff could be reduced to admissible evidence if needed at trial. Moreover, the party opposing summary judgment does not need to submit evidence in an admissible form to create an issue of material fact. Church of Scientology Flag Serv. Org., Inc., v. City of Clearwater, 2 F.3d 1514, 1530 (11th Cir. 1993) ("Even if [newspaper articles] would have been inadmissible at trial . . . such materials were appropriately submitted by the non-moving party in opposition to the motion for summary judgment") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 319, 324 (1986)).

    [2] The date on Check # 1083 is "1/2/2012." See Check # 1083 (DE# 88 at 10, 7/1/14). In its reply, the plaintiff admitted to paragraph 4 of the defendant's response which states: "On January 2, 2013, [the d]efendants . . . tendered a check to the [p]laintiff in the amount of $7,826.94 which was cashed by the [p]laintiff." See Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (DE# 88 at 2, 7/1/14); Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment (DE# 89 at 2, 7/8/14). Thus, for summary judgment purposes, the undersigned will accept the date of Check # 1083 as January 2, 2013.

notice that it would seek to foreclose on the mortgage.[3]

On February 11, 2013, the defendants were again assessed a $100.00 late charge for failing to make a timely payment on the "Class Action c/o John H. Ruiz P.A." account. See Account History (DE# 84-1 at 10, 6/2/14). On March 1, 2013, the defendants made a $7,826.94 payment. The defendants made no further payments on the account and from March 11, 2013 through July 11, 2013 they were assessed $100 monthly late charges. The plaintiff filed the instant Verified Complaint (DE# 1) on March 18, 2013.

## STANDARD OF REVIEW

The Court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(a), which states, in relevant part, as follows:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56 (a).

The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Adickes v. S.H. Kress & Co., 398 U.S.

---

[3] The defendants have filed the Affidavit of John H. Ruiz (DE# 78-1, 5/5/14) in support of their own motion for summary judgment and in opposition to the plaintiff's motion for summary judgment. The affidavit attests, in part, that Mr. Ruiz "was negotiating with the bank as to a modification and the bank officers [he] spoke with assured [him] that no formal action would be taken during this negotiation." Affidavit of John H. Ruiz (DE# 78-1 at ¶5, 5/5/14). The affidavit further attests that "[Mr. Ruiz] relied on the representations of the bank officers." Id. at ¶7. Even accepting these factual attestations as undisputed, they are insufficient to preclude summary judgment for the plaintiff for the reasons discussed below.

144, 157 (1970). That is, "[t]he moving party bears 'the initial responsibility of informing

the . . . court of the basis for its motion, and identifying those portions of the 'pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact.'" United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437

(11th Cir. 1991) (quoting Celotex, 477 U.S. at 323).

  In assessing whether the moving party has satisfied this burden, the Court is

required to view the evidence and all factual inferences arising therefrom in the light

most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th Cir.

1994). "When evaluating cross-motions for summary judgment, the Court analyzes

each individual motion on its own merits and thus views the facts on each motion in the

light most favorable to the respective nonmovant." Adega v. State Farm Fire & Cas. Ins.

Co., No. 07-20696, 2009 WL 3387689, at *3 (S.D. Fla. Oct.16, 2009). Summary

judgment is appropriate when there is no dispute as to any material fact and only

questions of law remain. Reich v. John Alden Life Ins. Co., 126 F.3d 1 (1st Cir. 1997).

If the record presents factual issues, the court must deny the motion and proceed to

trial. Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255

(1986).

  Despite these presumptions in favor of the non-moving party, the Court must be

mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense

to the parties and to the court occasioned by an unnecessary trial. Celotex, 477 U.S. at

322-323. Consequently, the non-moving party cannot merely rest upon his bare

assertions, conclusory allegations, surmises or conjectures.  Id.  As the Supreme Court

noted in <u>Celotex</u>:

> [T]he plain language of Rule 56( c) mandates the entry of summary
> judgment . . . against the party who fails to make a showing sufficient to
> establish the existence of an element essential to the party's case, and on
> which the party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial.

<u>Id.</u> at 322-323. Thus, the mere existence of a scintilla of evidence in support of the non-

moving party's position is insufficient. There must be evidence on which the jury could

reasonably find for the non-movant. <u>Anderson</u>, 477 U.S. at 251; <u>Matsushita Elec. Indus.</u>

<u>Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

<u>ANALYSIS</u>

**A.     The Defendants' Motion for Summary Judgment (DE# 78)**

The defendants argue that they are entitled to summary judgment because: (1)

they were not in default at the time the plaintiff filed the instant action; (2) the plaintiff

failed to comply with a condition precedent – providing the defendants with notice of

default – prior to filing the instant action; (3) the plaintiff accepted payment thereby

waiving its right to foreclose and (4) the plaintiff is estopped from bringing the instant

action based on oral representations made by bank officers. <u>See</u> Defendants' Motion

for Summary Judgment (DE# 78, 5/5/14). Alternatively, the defendants argue that the

Court should reopen discovery as an alternative to denying their summary judgment

motion. <u>See</u> Defendants' Response in Opposition to Plaintiff's Motion for Summary

Judgment (DE# 88 at 3, 7/1/14). For the reasons stated below, the Defendants' Motion

for Summary Judgment (DE# 78 at 3, 5/5/14) is **DENIED**.

The defendants have not shown that they are entitled to summary judgment as a

12

matter of law. The affidavit of defendant Ruiz states: "I made two payments totaling the $14,965.16[4] and therefore paid the claimed outstanding balance due." Affidavit of John H. Ruiz (DE# 78-1 at ¶3, 7/1/14) (footnote added). The "Consumer Loan Notice of Payment Due" states that the "past due amount" was $14,365.16 and that the total amount due on February 1, 2013 was $22,792.10. See Consumer Loan Notice of Payment Due (DE# 88 at 11, 7/1/14). Accepting the defendants' argument that Check #s 1083 and 1153 made the account current as of January 25, 2013 (the date of the second check), the defendants were again assessed a $100 late charge on February 11, 2013 and again on March 11, 2013, before the plaintiff filed its Verified Complaint on March 18, 2013. See Account History (DE# 84-1 at 10-11, 6/2/14). Thus, even if the defendants made the loan current on or about January 25, 2013 after the second check, the defendants were again assessed late charges on February 11, 2013 and March 11, 2013, before the plaintiff filed the instant action.

The Security Agreement and the Mortgage define default as the failure to make payments when due. See Security Agreement (DE# 1-2 at 3, 3/18/13); Mortgage (DE# 1-3 at 2, 3/18/13). The Security Agreement states that a "Payment Default" occurs when the "[b]orrower fails to make any payment when due under the indebtedness." Security Agreement (DE# 1-2 at 3, 3/18/13). The Security Agreement defines the term "borrower" as Mr. Ruiz. Id. at 5. Similarly, the Mortgage states that the mortgagor (Class Action of South Florida, Inc.) would be in default if it "d[id] not make any payment when

---

[4] There is a $688.72 discrepancy between the total amount of Check #s 1083 and 1153 ($15,653.88) and the amount Mr. Ruiz attests he paid in his affidavit ($14,965.16).

due." Mortgage (DE# 1-3 at 2, 3/18/13). The Mortgage further states:

> 32.    **TIME IS OF THE ESSENCE:** Time is of the essence. **This means that all payments which are required must be made on the day due.** Except as provided in Section 25 above, **there are no grace periods provided in this Mortgage. If I require additional time to make a payment, I understand that I must obtain authorization or approval for making a late payment in writing in advance**.

Id. at 3 (emphasis added). Because the defendants failed to make payments when due in February and March 2013 and there was no grace period, the defendants were in default at the time the plaintiff filed its Verified Complaint (DE# 1, 3/18/13).

The defendants further argue that they are entitled to summary judgment in their favor and that the Court should dismiss the Verified Complaint (DE# 1, 3/18/13) because the plaintiff failed to comply with a condition precedent prior to filing the instant action. See Defendants' Motion for Summary Judgment (DE# 78 at 3, 5/5/14). Specifically, the defendants maintain that the "[p]laintiff not only failed to comply with the provisions contained in the Note[5] with regard to notice and right to cure, but it also failed to attach anything to its complaint to support that [the p]laintiff satisfied the condition precedent to bringing this action." Id. (footnote added). In his affidavit, Mr. Ruiz attests that the plaintiff provided no notice to the defendants "of further default or that [it] sought to foreclose on the mortgage." Affidavit of John H. Ruiz (DE# 78-1 at ¶4, 7/1/14). However, the defendants have not shown that they were entitled to a notice of default or a notice of intent to commence foreclosure proceedings.

---

[5] The defendants state that they are quoting the Promissory Note. However, the language quoted by the defendants in their summary judgment motion is from the "Cure Provision" in the Security Agreement. Compare Defendants' Motion for Summary Judgment (DE# 78 at 3, 5/5/14) with Security Agreement (DE# 1-2 at 3, 3/18/13).

The only portion of the agreements between the parties cited by the defendants in their summary judgment filings in support of a notice requirement is the "Cure Provisions" in the Security Agreement. This provision states in full:

> **Cure Provisions.** If any default, **other than a default in payment** is curable and if Grantor has not been given a notice of breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default; (1) cures the default within fifteen (15) days; or (2) if the cure requires more than (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

Security Agreement (DE# 1-2 at 3, 3/18/13) (emphasis added). The express terms of the "Cure Provisions" excludes a "default in payment." Id. Therefore, the "Cure Provisions" do not provide the defendants with a contractual right to notice when they are in default with respect to payment.

The defendants have not cited to any additional paragraphs in the agreements between the parties which would entitled them to a notice of default. The Security Agreement provides that:

> **BORROWER'S WAIVERS AND RESPONSIBILITIES:** Except as otherwise required under this Agreement or by applicable law, (A) **Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement**; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) **Borrower waives any defenses that may arise because of any action or inaction of Lender,** including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and **Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.**
>
> ***

15

> **GRANTOR'S WAIVERS:** Grantor waives all requirements of presentment, protest, demand, and **notice of dishonor or non-payment to Borrower or Grantor, or any other party to the indebtedness** or the Collateral. . . . **No such act or failure to act shall affect Lender's rights against Grantor or the Collateral**.

Security Agreement (DE# 1-2 at 1, 3/18/13) (emphasis added). The defendants had no contractual right to a notice of default. Therefore, the plaintiff was not required to provide the defendants with notice prior to commencing the instant action or to attach such a notice to their verified complaint.

Similarly, the plaintiff was not required to provide the defendants with notice before accelerating the debt:

> **Accelerate Indebtedness**. Lender may declare the entire indebtedness, including any prepayment penalty which Borrower would be required to pay, **immediately due and payable, without notice of any kind to Borrower or Grantor**.

Security Agreement (DE# 1-2 at 3, 3/18/13) (emphasis added). The Mortgage also contained an acceleration provision. See Mortgage (DE# 1-3 at 2, 3/18/14) (stating "If I am in default, you may require that the unpaid balance of the Amount Financed be paid in full with accrued interest, but no prepayment credit is required because interest is not computed in advance for the term of the debt unless the Note provides for such a penalty."). The Mortgage does not contain a notice provision. Based on a plain reading of the agreements between the parties, the defendants were not entitled to notice prior to the plaintiff commencing these foreclosure proceedings. Therefore, the defendants' argument that the plaintiff has failed to comply with a condition precedent prior to filing this instant action is unpersuasive.

The plaintiff's acceptance of the January 2013 payments totaling $15,653.88[6] did not waive its right to accelerate the debt and bring the instant action because: (1) the defendants again defaulted on the debt in February and March 2013 and (2) the Security Agreement and the Mortgage contained anti-waiver provisions. See LRB Holding Corp. v. Bank of Am., 944 So. 2d 1113, 1114 (Fla. 3d DCA 2006) (per curiam) (affirming summary judgment for the bank and rejecting "[the borrower]'s . . . argument that the [b]ank's prior acceptance of [the borrower]'s late fees waived the Bank's right to enter a default without notice. Although the [b]ank previously accepted [the borrower]'s late payments, the note specifically provided that the lender may delay or forgo enforcing its rights or remedies under the note without losing them, and that the [b]ank could enter a default without providing the borrower notice. It was [the borrower]'s repeated failure to make timely payments that led to the [b]ank's decision to accelerate the note.").

As explained above, the account history shows that the defendants were assessed late charges 61 times including late charges in February and March 2013 and were therefore in default at the time the instant action was filed. See supra. The Security Agreement provides that:

> **No Waiver by Lender**: **Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender.** No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or

---

[6] See footnote 4.

> of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Security Agreement (DE# 1-2 at 4, 3/18/13) (emphasis added). Here, there was no written waiver by the plaintiff of its right to accelerate the debt. Similarly, the Mortgage states: "**NO WAIVER OF RIGHTS:** You may delay in enforcing any of your rights without losing any of them." Mortgage (DE# 1-3 at 3, 3/18/14). Therefore, the plaintiff's acceptance of the payments totaling $15,653.88 did not preclude it from accelerating the debt and filing the instant action. See MCA Television Ltd. v. Pub. Interest Corp., 171 F.3d 1265, 1271 (11th Cir. 1999) (stating that "notwithstanding [the plaintiff]'s acceptance without protest of [the defendant]'s consistent late payments on the licensing contracts for four of its shows, [the Court] conclude[d] based on the anti-waiver provision contained in the licensing contracts that, under Florida law, [the defendant] was in breach of contract when [the plaintiff] declared it as such [on a certain date].")

The defendants also argue that they are entitled to equitable estoppel. The elements of estoppel under Florida law[7] are: "1) a representation as to a material fact that is contrary to a later-asserted position; 2)  reliance on that representation; and 3) a change in position detrimental to the party claiming estoppel, caused by the

---

[7] The Security Agreement states that: "This agreement will be governed by the federal law applicable to lender and, to the extent not preempted by federal law, the laws of the State of Florida without regard to its conflicts of law provisions. . . ." Security Agreement (DE# 1-2 at 4, 3/18/13). The Mortgage states that: "If there are gaps in federal law as to non-interest provisions, and only to such extent, the law of the State of FLORIDA shall govern this transaction." Mortgage (DE# 1-3 at 1, 3/18/14).

18

representation and reliance thereon." State Dep't of Revenue v. Anderson, 403 So. 2d 397, 400 (Fla. 1981) (citing Greenhut Constr. Co. v. Henry A. Knott, Inc., 247 So. 2d 517, 524 (Fla. 1st DCA 1971)).

Mr. Ruiz' affidavit attests, in part, that he "was negotiating with the bank as to a modification and the bank officers [he] spoke with assured [him] that no formal action would be taken during this negotiation." Affidavit of John H. Ruiz (DE# 78-1 at ¶5, 5/5/14). The affidavit further attests that "[Mr. Ruiz] relied on the representations of the bank officers." Id. at ¶7. However, Mr. Ruiz' affidavit does not attest to "a change in position detrimental to the [defendants], caused by the representation and reliance thereon." Anderson, 403 So. 2d at 400. The defendants have failed to carry their burden of establishing the third element of an estoppel defense. Thus, even accepting the factual attestations in Mr. Ruiz' affidavit as undisputed, they are insufficient to grant summary judgment on the defendant's estoppel defense or to preclude summary judgment in favor of the plaintiff.

Moreover, the defendants cannot show that Mr. Ruiz' reliance on the oral statements made by bank officers was justifiable. In Regions Bank v. Old Jupiter, LLC, No. 10-80188-CIV, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010), this Court granted summary judgment in favor of the bank and rejected an equitable estoppel defense raised by the borrower and guarantor. The court noted that "an equitable estoppel defense . . . does not apply when the terms of a written contract contravene the alleged oral promise." This Court noted that a party cannot demonstrate justifiable reliance "where the alleged oral promises are 'completely inconsistent and irreconcilable with the express terms of the parties' written agreement.'" Id. (quoting

Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F. Supp. 2d 1334, 1339

(S.D. Fla. 1999) aff'd, 235 F.3d 1344 (11th Cir. 2000)).  This Court concluded that:

> As a matter of law, the [borrower and guarantor could not] claim that they
> justifiably relied on promises to extend the maturity date or to renew the
> loan when these statements [we]re flatly inconsistent and irreconcilable
> with the express terms of the original note, and the express terms of the
> loan extension letter agreement which authorized only a three month
> extension of the maturity date. Moreover, there is no evidence of any
> conduct by the Bank which could arguably have mislead the borrower or
> guarantor into believing that the Bank did not intend to enforce the note
> and guaranty.

Id. at 5.

On appeal, the Eleventh Circuit affirmed summary judgment in favor of the bank,

noting that:

> where statements are inconsistent with the definite terms of the parties'
> written agreement, a party cannot prove justifiable reliance. Advanced
> Marketing Systems Corp. v. ZK Yacht Sales, 830 So.2d 924, 928 (Fla. 4th
> DCA 2002). As noted above, the statements on which Appellants rely are
> inconsistent with the express terms of the Loan Documents. Therefore,
> the district court did not err by rejecting Appellants' equitable estoppel
> defense.

Regions Bank v. Old Jupiter, LLC, 449 F. App'x 818, 820 (11th Cir. 2011) (per curiam).

Similarly here, the Court finds Mr. Ruiz' reliance on oral statements made by

bank officers was not justifiable as a matter of law. Both the Security Agreement and

the Mortgage require any modification to be in writing. The Security Agreement states

that: "Lender shall not be deemed to have waived any rights under this Agreement

**unless such waiver is given in writing and signed by Lender**." Security Agreement

(DE# 1-2 at 4, 3/18/13) (emphasis added). The Mortgage states that: "Any change in

the terms of this Mortgage must be made in writing and signed by you, and me, or my

attorney-in-[illegible]." Mortgage (DE# 1-3 at 3, 3/18/14). In light of the terms of the

written agreements between the parties, it was unreasonable as a matter of law for Mr.

Ruiz to rely on any oral representations made by bank officers and there is no record

evidence that the representations made by bank officers were in writing.

In sum, the clear and unambiguous terms of the Security Agreement and the

Mortgage require a writing to modify their terms. The defendants have thus failed to

show that it was reasonable for Mr. Ruiz to rely on the bank officers' oral promises and

therefore cannot meet an essential element of their estoppel defense.[8]

Finally, the defendants have not shown entitlement to an additional period of

discovery. In their response to the plaintiff's motion for summary judgment, the

defendants state:

> Nevertheless, Fed. R. Civ. P. 56(c) "mandates the entry of summary
> judgment, after adequate time for discovery. In the case at bar, there has
> been no discovery undertaken. As a general rule, summary judgment
> should not be granted until the party opposing the motion has had an
> adequate opportunity to conduct discovery. Reflectone, Inc. v. Farrand
> Optical Co., Inc., 862 F.2d 841 ([11th Cir.1989]).

> As an alternative to the Court denying Defendants' Motion for Summary
> Judgment, Defendants move this Court pursuant to Rule 56(f) to allow
> them to undertake discovery in order to obtain relevant facts regarding the
> modification of the note and mortgage between the Plaintiff's agent and
> the Defendants and the Plaintiff's acceptance and cashing of the interest
> payments prior to and subsequent to the filing of this action.

Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (DE#

88 at 3, 7/1/14). This action was filed on March 18, 2013. The discovery cutoff was May

1, 2014. See Order Setting Pretrial Conference and Trial Date (DE# 63 at 2, 1/29/14).

---

[8] Additionally, although not raised by either party, the defendants' estoppel
argument would likely be barred by the statute of fraud. "[T]here can be no oral
modification of an agreement which was required to be in writing by the statute of
frauds." United Omaha Life Ins. Co. v. Nob Hill Assoc., 450 So. 2d 536, 539 (Fla. 3d
DCA 1984) (citation omitted).

The defendants had over a year to conduct discovery. Moreover, the defendants raised the modification and the acceptance of payment arguments as early as April 29, 2013 in a motion to dismiss. See Defendants' Motion to Dismiss (DE# 22 at 2, 4/29/13) (stating that "Defendant Ruiz contacted the Plaintiff and was in negotiations for a modification of the note and mortgage" and that "Defendants seek to dismiss this action on the grounds that the Plaintiff accepted payments . . . ."). Therefore, the defendants were well aware of these arguments and had ample opportunity to conduct discovery in the instant action. The fact that the defendants have chosen not to avail themselves of the discovery period is not grounds for denying the plaintiff's summary judgment motion.

For the reasons stated above, the defendants' affirmative defenses of failure to provide a notice of default, waiver and estoppel are inapplicable as a matter of law. The Defendants' Motion for Summary Judgment (DE# 78, 5/5/14) is **DENIED**.

## B.    The Plaintiff's Motion for Summary Judgment (DE# 84)

The plaintiff argues that it is entitled to summary judgment because: (1) the defendants were in default under the terms of the Security Agreement and the Mortgage, (2) the plaintiff was permitted to accelerate the defendants' indebtedness and foreclosure without notice to the defendants and (3) the Security Agreement and the Mortgage contained anti-waiver provisions. Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law in Support Thereof (DE# 84 at 2, 6/2/14).

In the instant case, the parties do not dispute that certain payments were not timely as established by the multiple late charges assessed to the "Class Action c/o

John H. Ruiz P.A." account. <u>See</u> Account History (DE# 84-1 at 10, 6/2/14). The plaintiff has submitted an account history showing 61 instances in which late charges were assessed against this account. Even accepting, <u>arguendo</u>, the defendants' argument that the account was current on January 25, 2013 (the date defendant Ruiz issued Check # 1153), the defendants again failed to make timely payments in February and March 2013, before the plaintiff filed the instant action. Both the Security Agreement and the Mortgage define the failure to make a payment when due as a default. <u>See</u> Security Agreement (DE# 1-2 at 3, 3/18/13); Mortgage (DE# 1-3 at 2, 3/18/13), <u>supra</u>. Therefore, the undisputed record evidence is that the defendants were in default at the time the plaintiff commenced the instant action on March 18, 2013.

The plaintiff's acceptance of the defendants' January 2013 payments did not constitute a waiver of the plaintiff's foreclosure rights. Both the Security Agreement (DE# 1-2 at 4, 3/18/13) and the Mortgage (DE# 1-3 at 3, 3/18/14) contain anti-waiver provisions which are enforceable under Florida law. <u>See</u> <u>MCA Television Ltd.</u>, 171 F.3d at 1271 (11th Cir. 1999); <u>LRB Holding Corp.</u>, 944 So. 2d at 1114, <u>supra</u>. Moreover, the defendants were not entitled to a notice of default prior to the plaintiff filing the instant action. <u>See</u> Security Agreement (DE# 1-2 at 1, 3, 3/18/13). Having already determined that the estoppel defense lacks merit (<u>see</u> discussion <u>supra</u>), the undersigned concludes that the plaintiff is entitled to summary judgment in its favor.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment (DE# 78, 5/5/14) is **DENIED** and that the Plaintiff's Motion for Summary

23

Judgment and Incorporated Memorandum of Law in Support Thereof (DE# 84, 6/2/14)

is **GRANTED** for the reasons stated herein. It is further

ORDERED AND ADJUDGED that the trial date and all other pretrial hearings

and deadlines are CANCELLED. It is further

ORDERED AND ADJUDGED that on or before **Thursday, August 21, 2014**, the

parties shall submit an agreed proposed Final Judgment including damages and all

relevant terms allowing for the sale of the vessel and reservation of jurisdiction to

address any deficiency judgment.

DONE AND ORDERED in Chambers at Miami, Florida this **14th** day of August,

2014.

_____

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record

24